UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTI MACALUSO | ) | CASE NO. |
| 3029 E. Ocean Blvd. | ) | |
| Long Beach, CA 90803 | ) | JUDGE |
| | ) | |
| *On behalf of herself and all others* | ) | **PLAINTIFF'S COLLECTIVE** |
| *similarly situated,* | ) | **ACTION COMPLAINT** |
| | ) | |
| Plaintiff, | ) | (Jury Demand Endorse Herein) |
| | ) | |
| *v.* | ) | |
| | ) | |
| ZIRTUAL STARTUPS, LLC | ) | |
| c/o Statutory Agent | ) | |
| KBHR Statutory Agent Corp. | ) | |
| P.O. Box 361715 | ) | |
| Columbus, OH 43236 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Kristi Macaluso, on behalf of herself and all others similarly situated, by and through counsel, respectfully files this Collective Action Complaint, and states and alleges the following:

**INTRODUCTION**

1.     Plaintiff Kristi Macaluso brings this case to challenge policies and practices of Defendant Zirtual Startups, LLC (hereinafter referred to as "Zirtual" or "Defendant") that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of [herself] or themselves and other employees similarly situated" (the "FLSA Collective").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §
1331 and 29 U.S.C. § 216(b).

3.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. §
1391(b) because Defendant resides in this judicial district and division and all or a substantial
part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

4.      At all times relevant, Plaintiff Kristi Macaluso was a citizen of the United States
and a resident of Los Angeles County, California.

5.      Defendant Zirtual is an Ohio limited liability company with its principal place of
business in Franklin County, Ohio. According to records maintained by the Ohio Secretary of
State, Defendant Zirtual's statutory agent for service of process is KBHR Statutory Agent Corp.,
P.O. Box 361715, Columbus, OH 43236.

## FACTUAL ALLEGATIONS

### Defendant's Business

6.      Zirtual is a Columbus, Ohio-based company providing virtual assistants to
companies and individuals. Defendant's website states that "[a]t Zirtual, we hire US-based,
detail-oriented people who strive to provide our clients with the best assistance on the planet. All
Virtual Assistants go through a rigorous, multi-step vetting process that tests everything from
their communication and tech skills to their creativity and resourcefulness. Thousands apply, but
only the best of the best get to call themselves VAs." [1]

---

[1] https://www.zirtual.com/ (accessed Aug. 15, 2019).

## Defendant's Status as an Employer

7.      Defendant is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and employed non-exempt employees, including Plaintiff.

8.      Defendant is an enterprise within the meaning of 29 U.S.C. § 203(r).

9.      Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

10.     Defendant operates and controls an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

11.     Defendant is an employer of Plaintiff and other members of the FLSA Collective as Defendant exercises the power to hire and/or fire virtual assistants; supervises and controls virtual assistants' work schedules and conditions of employment; determines virtual assistants' rates and methods of payment; and maintains or is required to maintain records, including employment records.

## Plaintiff's and the FLSA Collective's Employment Statuses with Defendant

12.     Plaintiff Kristi Macaluso has been employed by Defendant Zirtual as a virtual assistant since approximately June 2017 to August 2019.

13.     At all times relevant, Plaintiff and other members of the FLSA Collective were employees within the meaning of 29 U.S.C. § 203(e).

14.     At all times relevant, Plaintiff and the FLSA Collective were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

## Zirtual's Misclassification of Virtual Assistants as Independent Contractors

15.     Defendant Zirtual, in violation of the FLSA, classifies most of its virtual assistants as so-called "independent contractors." Through this misclassification, Defendant knowingly,

willfully, and deliberately fails to compensate Plaintiff and other members of the FLSA

Collective overtime compensation at at least one and one-half their regular rates for all hours

worked in excess of forty (40) hours per workweek.

16.     In fact, Defendant Zirtual's virtual assistants are employees of Defendant

according to the standards applicable under the FLSA and are entitled to overtime compensation.

17.     Defendant posts job advertisements on employment websites including Google

Jobs, LinkedIn and ZipRecruiter. One such posting from about July 2019 provides the "Essential

Duties And Responsibilities" as follows:

- Project management and organization- to facilitate on-time project and goal completion.
- Personal and business calendar management- scheduling and coordinating appointments as necessary; proactively monitoring the client's calendars to identify potential conflicts and ensure the team is maximizing the client's time.
- Research- This may include research on events, travel, projects, etc. Provide research results to the team members within established time frame, based on best practices learned in Zirtual training and team preferences.
- Purchases- ensuring specifications of the purchase meet the client's satisfaction.
- Expense reporting and organization of expenses as necessary.
- Administrative tasks- this may include but is not limited to inbox management, calendar management, transcription, standard business correspondence, research and data entry.
- Email inbox management- this may require, among other responsibilities, responding to and organizing emails as necessary, based on specific guidelines provided by the client and in line with Zirtual policies and practices.
- Social media management and marketing
- Attend Meetings- as requested by the client. Draft agendas, take meeting minutes and provide follow up as required.
- The VA must provide continuous clear communication about task status, needs, and questions to their clients. They should
    - acknowledge all tasks assigned within the established time frame
    - ensure that they understand expected due dates, and communicate any changes or delays with the client
    - ensure the client is aware of hour usage and renewal dates by sending a Weekly Usage Report, and if requested, end of day reporting.
- The VA should be open to feedback from the Account Supervisor on KPIs, task quality and time management

- The VA will reach out to the Account Supervisor whenever they need additional task support, or client coverage during a vacation or illness. The Account Supervisor will facilitate assistance from other VA's.
- The VA will ensure they accurately track all billable hours for the client in the official Zirtual time tracking system.
- Other duties as assigned.

The job posting further lists the "Requirements" as follows:

- Clear, precise, excellent, proactive and professional written and verbal communication skills
- Ability to organize and effectively prioritize tasks
- Ability to multi-task with various programs and learn new programs as required
- Ability to commit to a minimum year contract
- Must have meticulous attention to detail, along with the ability to comprehend difficult tasks
- Capable of responding to stress in a fast-paced environment
- Strong interpersonal skills and ability to quickly develop working relationships
- Affable and enthusiastic attitude towards teamwork
- Internet/Web savvy

The job posting further states "Qualifications" as:

- Associate's Degree, Bachelor's Degree, or a minimum of 7 years [sic] experience as an Executive Assistant to C-level executives
- Minimum of 4 years of administrative experience
- Preferred experience working with C-level executives
- Proficiency with Google Suite and Google Calendar, and fluency in Microsoft Office
- Proficiency with a task management program such as Trello or Asana
- Preferred experience with a communication program such as Slack
- Preferred experience with a CRM platform such as SalesForce, Hubspot, or Zoho
- Preferred experience with an expense reporting program such as Quickbooks or Expensify
- Preferred experience with a travel management program such as Concur
- Preferred experience with a social media management program such as Hootsuite and Wordpress
- Reliable Internet connection and phone
- Typing ability of at least 50 WPM with accuracy
- Able to pass background and reference checks
- Available from 9 00am to 6 00pm PST Monday-Friday

Defendant's job posting further states: "You will be compensated as a 1099 independent contractor. VA's are paid 50% of their client's monthly plans with hourly rates averaging $13 - $18 per hour depending on the client mix[.]"

18.     Defendant has a high degree of control over the manner in which virtual assistants perform their job duties. For example Zirtual's "Comprehensive Virtual Assistant Handbook" ("Handbook") provides the following: "Zirtual's hours are 9am-6pm, either Eastern or Pacific Time. You will need to be available and responsive to your clients and Zirtual management during these hours." The Handbook further provides: "All internal and external communication must be responded to within two hours. This will either be an acknowledgement of receiving a task for larger ones, or a completed task for smaller ones. The turnaround time will depend on the task and the deadline the client sets." Zirtual also requires virtual assistants to sign and agree to "Independent Contractor Agreement[s]" ("IC Agreement").

19.     Virtual assistants do not exert control over any meaningful part of Defendant's business operations and do not stand as a separate economic entity from Defendant. Defendant exercises control over all aspects of the working relationship with virtual assistants. For example, the IC Agreement provides, in relevant part:

7. … If the Company determines that You are not providing the Services adequately to the Business, the Company may impose penalties against You. The Company deems certain responsibilities of Yours to be essential to the Services and essential to this engagement. These essential functions, include, but are not limited to:

(A)Submitting Client Status Reports to the Company and Client by close of business every Monday and for each assigned client; (B)Responding to an inquiry from an assigned client or Zirtual management within 2 hours during Zirtual Business Hours; (C) Notifying Zirtual and assigned clients about planned work outages; (D)Notifying Zirtual of unplanned work outages; (E)Properly recording time spent on tasks for assigned clients in Harvest (or Zirtual's designated time recording tracking system); (F)Keeping client files (client profiles) current with tasking information for assigned clients; (G)Completing an Action Plan for all new clients; (H)Submitting a personalized gift idea and thank you note. If You fail to

provide of [sic] any of these functions adequately on two occasions within a 90-day period, the Company may, in its sole discretion, (i) withhold future assignments to You; (ii) withhold some or all of the compensation; and/or (iii) terminate this agreement as provided in Paragraph 8 below.

20.    As provided above, Defendant controls the work virtual assistants perform, the hours and schedule during which they perform that work and the manner in which they perform virtual assistant duties.

21.    As above, Defendant determines the response time during which virtual assistants are required to perform their work. Defendant Zirtual penalizes virtual assistants if they fail to adhere to strict rules and requirements.

22.    Virtual assistants' opportunities for profit or loss are established unilaterally by Defendant; any opportunities virtual assistants have to earn remuneration are unilaterally determined and controlled by Defendant.

23.    Virtual assistants do not have an opportunity for greater profits based on their management and/or technical skills. Moreover, virtual assistants cannot modify their fee amount or availability in order to maximize their profit or fit their work into their individual schedules. Virtual assistants cannot renegotiate compensation throughout the employment relationship with Zirtual or Zirtual's customers.

24.    Defendant requires Plaintiff and other members of the FLSA Collective to perform virtual assistant duties under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendant. Virtual assistants are not permitted to perform or accept services on a per job or project-to-project basis or negotiate prices with Zirtual or Zirtual's customers. Virtual assistants are not permitted to charge different prices based on other factors, such as their work experience, demand, or availability outside Defendant Zirtual.

25. Likewise, Zirtual unilaterally determines the amounts its virtual assistants are paid and unilaterally changes that amount from time to time.

26. As a matter of economic reality, Defendant's virtual assistants are economically dependent on Defendant.

27. Virtual assistants work for Defendant and are not in business for themselves.

28. Defendant does not permit virtual assistants to hire or subcontract other qualified individuals to provide virtual assistant services to Defendant Zirtual's clients, thereby increasing their revenues, as an independent contractor in business for herself or himself would have the authority to do.

29. Defendant's capital investments and expenditures substantially outweigh any expenditures required on the part of Plaintiff and other members of the FLSA Collective.

30. Defendant's virtual assistants perform work that is integral to Defendant's primary, regular business of the operation of Defendant Zirtual. Defendant is in the business of providing virtual assistant services to Zirtual's clients. Zirtual's "primary purpose" is in fact to provide Virtual assistant services to end-market consumers. Zirtual is not a "referral system" that connects service providers with consumers.

31. Defendant has actual knowledge of hours worked by Plaintiff and other members of the FLSA Collective. Defendant's Handbook provides: "How do we track client hours? A: All client tracking is done through Harvest. Please see this quick reference guide for details."

32. Virtual assistants are held out to Defendant's customers as highly trained [2] employees and/or representatives of Defendant. Virtual assistants are dependent upon Zirtual to perform their job duties.

---

[2] https://www.zirtual.com/ (accessed Aug. 15, 2019).

33.     Defendant has a far more significant role than virtual assistants in drawing customers to Zirtual's virtual assistant services.

34.     Defendant's opportunity for profits and risk of loss are much greater than virtual assistants', if any.

35.     Defendant's Virtual assistants typically work full time for Defendant Zirtual, and frequently work more than forty (40) hours per workweek.

36.     Virtual assistants work for Defendant in comparatively low-paying jobs, and typically hold their positions with Defendant for long periods of time.

37.     Virtual assistants are under the direct supervision and control of Defendant's supervisors and managers. Defendant's supervisors and managers closely monitor virtual assistants' hours and work duties. Defendant's supervisors and managers supervise the work duties of Plaintiff and other members of the FLSA Collective to make sure their job performance is of sufficient quality as determined by Defendant. Virtual assistants are required, for instance, to answer all incoming correspondence within a two (2) hour window, and are penalized for failing to fulfill this, and other, requirements.

38.     Defendant's virtual assistant supervisors and managers assist virtual assistants in the performance of their duties.

39.     Defendant instructs virtual assistants how, when and where they are to perform their duties.

40.     Defendant owns and/or controls the equipment, software and supplies that virtual assistants use to perform their work, including but not limited to supplying many virtual assistants with computers that virtual assistants use to perform their duties, and software by which virtual assistants perform client tasks and log hours and duties performed.

41.     Defendant conducts initial interviews and intense vetting procedures for virtual assistants and hires virtual assistants at the sole discretion of Zirtual. Zirtual claims to only hire 2% of the applicants that apply.[3]

42.     Among other things, as a result of the hours requirements imposed by Defendant, virtual assistants are limited in their ability to work for other companies or operate independent businesses or it is impracticable to do so. Because of Defendant's hours availability/on call policy, virtual assistants are unable to have other means of full-time employment. Virtual assistants' work for Zirtual regularly consumed the normal workweek of full-time employees.

43.     Defendant interviews, supervises, directs, disciplines, reprimands, schedules and performs other duties of an employer. Defendant hires/fires virtual assistants at will, and virtual assistants' employments are not temporary nor have a fixed end-date. Defendant Zirtual performs functions associated with that of an employer with regard to an employee.

### Defendant's Failure to Pay Overtime Compensation

44.     During their employment with Defendant, Plaintiff and other members of the FLSA Collective were required to work overtime, more than forty (40) hours per workweek. However, Defendant did not pay overtime compensation to virtual assistants at one and one-half times their "regular rate" of pay.

45.     The FLSA required Defendant to pay overtime compensation to their employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty. 29 U.S.C. § 207.

---

[3] https://www.zirtual.com/why-zirtual/us-based-virtual-assistant (accessed Aug. 15, 2019).

46. Defendant did not pay Plaintiff and other members of the FLSA Collective overtime compensation when working more than forty (40) hours in a single workweek as required by the FLSA, 29 U.S.C. § 207.

47. Moreover, although Defendant suffered and permitted Plaintiff and other members of the FLSA Collective to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff and other members of the FLSA Collective overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff and other members of the FLSA Collective were not paid overtime for their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq*.

48. Defendant's failure to compensate Plaintiff and other members of the FLSA Collective for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay violates the FLSA, 29 U.S.C. § 207.

### Defendant's Failure to Pay for All Hours, Including Overtime Hours, Worked

49. In addition to the above unlawful overtime payroll practices or policies, Defendant consistently failed to pay Plaintiff and the FLSA Collective for all hours, including overtime hours, worked. 29 U.S.C. § 207.

50. For example, virtual assistants are required to perform uncompensated standardized tasks before and/or after the compensated tasks they are required to perform for Zirtual's clients. This unpaid work is required by Defendant, is performed for Defendant's benefit, and constitutes part of virtual assistants' principal activities and/or is integral and indispensable to their principal activities.

51. Although Defendant suffered and permitted Plaintiff and the FLSA Collective to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff and the FLSA

Collective overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. *See* 29 C.F.R. § 785.11. Though virtual assistants regularly complete tasks that are required by Defendant, are performed for Defendant's benefit, and constitute part of virtual assistants' principal activities and/or are integral and indispensable to their principal activities, virtual assistants are not permitted to log the time required to perform these tasks, and are thus not paid for the time spent performing these standardized tasks.

52.     As a result, Plaintiff and the FLSA Collective were not properly paid overtime for many of their overtime hours worked as required under the FLSA, 29 U.S.C. §§ 201, *et seq*., and Ohio law.

### Defendant's Record Keeping Violations

53.     The FLSA required Defendant to maintain accurate and complete records of employees' time worked and amounts paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

54.     Defendant failed to keep accurate records of hours worked. Thus, Defendant did not record or pay all hours worked in violation of the FLSA.

**The Willfulness of Defendant's Violations**

55.    Defendant knew that Plaintiff and the FLSA Collective were entitled to overtime compensation pay under federal and state law or acted in reckless disregard for whether they were so entitled.

56.    Defendant intentionally and willfully circumvented the requirements of the FLSA. Defendant designed and implemented an "independent contractor" pay structure in an attempt to circumvent overtime pay requirements.

**COLLECTIVE ACTION ALLEGATIONS**

57.    Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

58.    Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of [herself] or themselves and other employees similarly situated."

59.    The FLSA Collective consists of:

All present and former virtual assistants of Defendant during the period of three years preceding the commencement of this action to the present.

60.    Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were non-exempt employees of Defendant, all were subjected to and injured by Defendant's unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty per workweek, and all have the same claims against Defendant for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

61.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

62.     Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of over 200 persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and was required to maintain, pursuant to the FLSA.

**COUNT ONE**
**(FLSA Overtime Violations)**

63.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

64.     Plaintiff brings this claim for violation of the FLSA's overtime provisions.

65.     The FLSA requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay.  29 U.S.C. § 207(a)(1).

66.     Plaintiff and the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

67.     Defendant did not pay overtime compensation to Plaintiff and the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours.

68.     By engaging in the above practices and policies, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

69.     As a result of Defendant's violations of the FLSA, Plaintiff and the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29

U.S.C. § 216(b) entitles Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

A.    Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.    Enter judgment against Defendant and in favor of Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b);

C.    Award compensatory damages to Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages, as well as liquidated damages in an equal amount; and

D.    Award Plaintiff compensatory and punitive damages, her costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221    F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)