UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTI MACALUSO, | ) | CASE NO. 2:19-CV-3616 |
| | ) | |
| *On behalf of herself and all others* | ) | CHIEF JUDGE |
| *similarly situated,* | ) | ALGENON L. MARBLEY |
| | ) | |
| Plaintiff, | ) | CHIEF MAGISTRATE JUDGE |
| | ) | ELIZABETH P. DEAVERS |
| *v.* | ) | |
| | ) | **JOINT MOTION FOR APPROVAL OF** |
| ZIRTUAL STARTUPS, LLC, | ) | **SETTLEMENT** |
| | ) | |
| Defendant. | ) | |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit 1: | *Joint Stipulation of Settlement and Release*; |
| Exhibit 2: | Proposed Final Order and Judgment Approving Settlement and Dismissing Action; |
| Exhibit 3: | Exhibit A to *Joint Stipulation of Settlement and Release* – Individual Payments Allocation Schedule; and |
| Exhibit 4: | Declaration of Plaintiffs' Counsel. |

The following sections of this Motion explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

I.      **THE LITIGATION**

    **A. The Claims and Issues**

Plaintiff Kristi Macaluso filed this Action in the United States District Court for the Southern District of Ohio, Eastern Division on August 19, 2019. (ECF #1.) Plaintiff's Complaint alleged, among other things, that Defendant misclassified Plaintiff and other similarly situated virtual assistants of Defendant as independent contractors and failed to pay Plaintiff and other similarly situated virtual assistants overtime wages allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"). (*Id.*) Defendant filed an Answer to Plaintiff's Complaint, denying all liability under any of Plaintiff's claims. (ECF #10.)

Defendant Zirtual Startups, LLC ("Zirtual") is a Columbus, Ohio-based company connecting virtual assistants to companies and individuals. Plaintiff contends that she and other virtual assistants were misclassified as independent contractors and Defendant therefore failed to pay the virtual assistants overtime wages allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"). (Compl., ECF #1.) The parties hotly dispute whether Plaintiff and others were improperly classified as independent contractors and whether the Plaintiffs worked any hours beyond forty in any workweek. Defendant believes that Plaintiffs very rarely if ever worked beyond forty hours in a workweek, and that even if they did any such time is greatly exaggerated by Plaintiff and the Opt-Ins. Defendant further asserts that the individualized analysis of the issues of classification and hours worked that would be required as to each potential class member would warrant decertification of this collective action.

Obtaining the alleged unpaid wages at trial would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) defeat Defendant's argument that these virtual assistants were properly classified as independent contractors; (3) prove that each opt-in collective action Plaintiff really performed compensable overtime work each workweek, in addition to the amounts of these times, and defeat Defendant's argument that the amount of overtime work Plaintiffs allege, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence; and (4) defeat Defendant's legal argument that any alleged violation was not willful and/or made in good faith.

### B. Conditional Class Certification

The Court granted the Parties' Joint Motion/Stipulation for Conditional Certification and Notice (*see* ECF ##11, 15) on April 7, 2020. (ECF #16.) Notice was emailed to putative class members, and the opt-in period ended sixty (60) days after the date the Notice and Opt-In Consent Form were mailed. (*See* ECF #11 at ¶ 4; ECF #16 at ¶ 4.) Those putative class members who opted in to Case No. 2:19-CV-3616 were joined as party Plaintiffs and form the group designated as "Settlement Opt-In Plaintiffs" for purposes of this Settlement. In addition to the Named Plaintiff, 27 individuals have opted into the matter pursuant to 29 U.S.C. § 216(b) who have not withdrawn their consent forms. (See Exhibit 3.) [1]

### C. Discovery and Document Analysis

The parties engaged in extensive discovery, and Defendant ultimately produced voluminous data and documents necessary to fully and fairly evaluate the claims of the Plaintiff and Opt-Ins. Prior to engaging in settlement negotiations, Plaintiffs' Counsel conducted a

---

[1] One Opt-In Plaintiff, Aubrey Woods, requested that her opt-in consent form be withdrawn.

comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents.

Defendant ultimately produced approximately 2,100 pages of voluminous personnel, compensation and hours data and documents in addition to Microsoft Excel spreadsheets where available. Plaintiffs' Counsel ultimately created spreadsheets comprising of approximately 200,000 data points from the records produced by Defendant. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.   THE NEGOTIATIONS

Following Plaintiff's receipt of the voluminous data and documents necessary to fully and fairly evaluate the claims of the Plaintiff and Opt-Ins, the parties engaged in a mediation before Honorable Magistrate Judge Mark R. Abel on October 28, 2020. These negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Exhibit 4.) Formal settlement documents, including the *Joint Stipulation of Settlement and Release* attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III.   THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Exhibit 3) – are based proportionally on an

4

individual assessment of the workweeks worked by Plaintiffs for Defendant as independent contractors. Opt-In Plaintiffs who have no damages during the period of three years prior to the date their consent form was submitted, including for Shawn Jones, Katie O'Brien, Tiffany Storedahl, Tammy Rosecrans and Tyler Jones, will receive a $200 payment as consideration for their release of FLSA claims based on potential liability of Defendant if this Court might, but for this settlement, issue a tolling order on their claims.[2] Opt-In Plaintiff Asiah Coleman, who does not recall working overtime hours during the applicable period, will receive a $200 payment as consideration for the release contained in the Settlement Agreement. The settlement achieves an excellent result for the covered virtual assistants, and results in an average payout of $3,410.41 per worker.

In addition, the Named Plaintiff, Kristi Macaluso, will receive a service award of $3,000.00 in recognition of her service to Plaintiffs' Counsel and her contribution to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Macaluso consulted with Plaintiffs' Counsel at critical stages; attended the October 28, 2020 Zoom mediation; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; and provided and reviewed other important documents and information throughout the course of the litigation.

---

[2] While the Joint Stipulation for Conditional Certification was filed on October 29, 2019 (ECF #11), the Court did not rule on the motion until April 7, 2020 (ECF #16). Had the Court granted conditional certification in November 2019, Tiffany Storedahl, for example, would have has a potential claim for approximately 5 months assuming a prompt opt-in. However, she did not receive notice until after the Court issued the Order granting Conditional Certification and Notice (*id.*), which resulted in the evaporation of her claims. That said, the parties have agreed that these five opt-in Plaintiffs will each recover $200 which will provide recovery for these Plaintiffs whose claims have likewise evaporated but who would face an uphill battle to obtain equitable tolling of their claims. *See, e.g., Fenley v. Wood Group Mustang, Inc*., S.D.Ohio No. 2:15-cv-326, 2018 U.S. Dist. LEXIS 178182, at *28-29 (Oct. 17, 2018).

Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed

Settlement. Plaintiff Macaluso's efforts have resulted in a significant recovery for the other Opt-

Ins.

Plaintiffs' Counsel will receive an agreed-upon amount for attorneys' fees and

reimbursement of litigation costs. The payment to counsel represents a significant reduction from

the total lodestar attorney fees expended in the prosecution of the Action. (*See* Exhibit 4.) The

attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs'

Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs'

Counsel may not be disbursed until after the final approval order is issued by the Court,

contemporaneously along with the settlement payments to Plaintiff and Opt-Ins.

## IV.    THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or

compromised only with the approval of the district court or the Secretary of Labor. *See, e.g.,*

*Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (Marbley, J.) (citing

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641

(1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food*

*Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the

settlement, the Court should determine that the compromise is a fair and reasonable resolution of

a bona fide dispute over FLSA provisions. *Zego v. Meridian-Henderson*, S.D.Ohio No. 2:15-CV-

3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (Marbley, J.) (quoting *Kritzer v.*

*Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at

*5 (S.D. Ohio May 30, 2012) (The Court must ensure "there is a bona fide dispute between the

parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair,

reasonable, and adequate."); *see also Landsberg v. Acton Ents*., S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2 (June 16, 2008), fn. 1 (quoting Lynn's Food Stores, Inc., 679 F.2d at 1353)

### A.  The Seven-Factor Standard is Satisfied

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b).  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20.  *See also Crawford v. Lexington-Fayette Urban Cty. Govt.,* E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). These factors include "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford*, 2008 WL 4724499, at *3 (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011) (citing *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008), citing *Granada,* 962 F.2d at 1205-06)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant

vehemently denies, but also each virtual assistant's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered virtual assistants performed any work in excess of forty hours in any workweek, in addition to the amounts of these times. Defendant argued that the amount of overtime work Plaintiffs allege, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence, and that even if virtual assistants worked more than forty hours in a workweek they were nonetheless properly classified as independent contractors and thus not entitled to overtime compensation. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiff and Opt-Ins is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and Opt-Ins to this action.

The other six factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in substantial document review, comprehensive data analysis, and

due diligence prior to arduous negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at \*4-5. Counsel on both sides support the Settlement, as does the Plaintiff herself. (*See* Exhibits 1, 4.)

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable."  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*25 (citing *Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at \*6 (June 15, 2010), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Plaintiff and Opt-Ins – listed in the Individual Payments Allocation Schedule (Exhibit 3) – represent a substantial percentage of the potential value of their claims, and the allocations are based proportionally on an individual assessment of the workweeks worked by Plaintiffs for Defendant as independent contractors and, in Plaintiffs' Counsel's judgment, a reasonable estimate of weekly overtime hours worked by each Plaintiff during the statutory period. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the damages methodology that Plaintiff and Opt-In's will present at trial.

### C.  The Service Award to the Plaintiff Is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and her contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, reasonable service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (May 4, 2018) (approving $7,500 service award to named plaintiff).

Indeed, based on the Declaration of Plaintiffs' Counsel, the named Plaintiff Kristi Macaluso incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Macaluso consulted with Plaintiffs' Counsel at critical stages; attended the October 28, 2020 Zoom mediation; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of herself and members of the FLSA collective; and provided and reviewed other important documents and information throughout the course of the litigation. Her contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff Kristi Macaluso faithfully represented the interests of the Potential Opt-Ins and ably assisted Plaintiffs' Counsel.

Her contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $3,000.00 is reasonable and well-earned.  Defendant has no objection to this award.

### D.  Plaintiffs' Counsels' Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.C.R. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "In determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23,

2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (citing *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

In the present case, the efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Exhibit 3) – are based proportionally on an individual assessment of the workweeks worked by Plaintiffs for Defendant as independent contractors and a reasonable estimate of weekly overtime hours worked by each Plaintiff. As noted above, even Opt-In Plaintiffs who may have no damages based off recently compelling tolling case law will still receive a recovery. *See Fenley v. Wood Group Mustang, Inc*., 2018 U.S. Dist. LEXIS 178182, at \*28-29.  Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as

investigation and interviewing of current and former virtual assistants of Defendant and putative opt-in class members.

The activities of Plaintiffs' Counsel significantly intensified following the parties' Joint Stipulation for Conditional Certification and Notice. (ECF ##11, 11-1, 11-2, 11-3.) Plaintiffs' Counsel researched and drafted Plaintiffs' Motion for Order on Conditional Certification. (*See* ECF #15.) Following the Court's Order Granting Conditional Certification (ECF #16), Plaintiffs' Counsel issued and supervised notice to nearly 350 potential opt-in plaintiffs. Defendant ultimately produced, and Plaintiffs' Counsel tediously analyzed, approximately 2,100 pages of voluminous personnel, compensation and hours data and documents. Defendant provided Plaintiffs' Counsel with payroll, timekeeping, and virtual assistant task/activity records for the Named and Opt-In Plaintiffs as cumbersome individual PDF files in addition to Microsoft Excel spreadsheets where available. Plaintiffs' Counsel both manually and electronically transcribe this data into a computable database-equivalent electronic format. Plaintiffs' Counsels' computations considered approximately 200,000 data points and permitted a computation of the alleged unpaid overtime wages for the Named and Opt-In Plaintiffs. In addition, following the establishment of the opt-in class, Plaintiffs' Counsel interviewed nearly every Plaintiff and used the obtained information to supplement the damages computation and demand for mediation, respond to Defendant's First Set of Interrogatories that were served upon each of the 28 Plaintiffs, and prepare for direct examination at trial. The analyses, investigation and interviews were time-consuming, but proved instrumental to the negotiation of the proposed Settlement. Prior to the mediation, the parties also engaged in an informal dispute regarding the inclusion of late opt-ins and the production of data thereto.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named and Opt-In Plaintiffs. As of December 2, 2020, at a combined fee lodestar of $72,220.00, the requested attorney fee of $50,000.00 results in a "negative multiplier" if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 at ¶ 45.) Such a negative multiplier supports that the fee sought is reasonable. *See, e.g, Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)); *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019). In addition, the Settlement provides for $1,508.65 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 at ¶¶ 46-47.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Defendant does not oppose the proposed payment.

## V.     CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

s/ Ryan A. Winters                      s/ Loriann E. Fuhrer    (via email consent)
Joseph F. Scott (0029780)               Loriann E. Fuhrer (0068037)
Ryan A. Winters (0086917)               KEGLER BROWN HILL + RITTER CO., LPA
Kevin M. McDermott II (0090455)         65 East State Street, Suite 1800
SCOTT & WINTERS LAW FIRM, LLC           Columbus, Ohio 43215

14

The Caxton Building                          Phone: 615-462-5474
812 Huron Rd. E., Suite 490                  Fax: 614-462-2634
Cleveland, OH 44115                          lfuhrer@keglerbrown.com
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com                   *Attorney for Defendant Zirtual Startups, LLC*
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)
