IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **KRISTI MACALUSO,** *et al.*, | : | |
| | : | Case No. 2:19-CV-3616 |
| Plaintiffs, | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Chief Magistrate Judge Deavers |
| **ZIRTUAL STARTUPS, LLC,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>FINAL APPROVAL ORDER</u>**

This matter is before the Court on the parties' Joint Motion for Settlement Approval. (ECF No. 38). For the following reasons, the Court **GRANTS** the Joint Motion for Settlement Approval and the case is **DISMISSED WITHOUT PREJUDICE**. The parties are directed by this Court to file a Dismissal Order dismissing this case with prejudice not later than thirty (30) days after the entry of this Order.

This matter is now terminated by settlement and shall be considered, pursuant to Fed. R. Civ. P. 41, dismissed without prejudice as to all claims, until the parties file the above-referenced Dismissal Order dismissing this matter with prejudice, unless the case is reopened for good cause shown upon proper motion of one or more parties to this action. The Court will retain jurisdiction over the settlement agreements.

**I.   BACKGROUND**

This action for unpaid overtime wages was brought pursuant to the Fair Labor Standards Act ("FLSA") by Plaintiff Kristi against Zirtual Startups, LLC, a company that provides virtual assistants to both companies and individuals. (ECF No. 1). Ms. Macaluso was employed by Zirtual

as a virtual assistant between June 2017 through at least August 2019, when this litigation began. (*Id.* ¶ 12). Zirtual recruits virtual assistants via job advertisements on major employment websites, seeking candidates with experience in project management, personal and business calendar management, research, purchasing, and other administrative tasks typically performed by personal assistants. (*Id.* ¶ 17). Potential candidates are subject to "intense vetting procedures." (*Id.* ¶ 41). The advertisements informed candidates that they would be compensated as 1099 independent contractors and could expect average hourly rates between $13 to $18 per hour. (*Id.*). Ms. Macaluso contends that Zirtual set the working hours for virtual assistants and set forth expectations for virtual assistants in a "Comprehensive Virtual Assistant Handbook." (*Id.* ¶ 18). Virtual assistants also sign "Independent Contractor Agreement[s]." (*Id.*).

Ms. Macaluso challenged Zirtual's practice of classifying most of its virtual assistants as "independent contractors," alleging it was a misclassification that resulted in a failure to pay overtime compensation. (*Id.* ¶ 15). She alleged that the Defendant exercised control over "all aspects" of the working relationship with virtual assistants. (*Id.* ¶ 19). This control extended to virtual assistants' opportunities for profit or loss. (*Id.* ¶¶ 22–23). Virtual assistants were not to perform or accept services on a per-job or project-to-project basis or otherwise negotiates prices with Zirtual or Zirtual's customers. (*Id.* ¶ 24).

She also alleged that virtual assistants frequently worked in excess of forty hours per week without overtime compensation. (*Id.* ¶¶ 35, 44). Because Zirtual sets the working hours for virtual assistants, virtual assistants are limited in their ability to work for other companies or operate independent businesses. (*Id.* ¶ 42). Zirtual also maintains an on-call policy for its virtual assistants. (*Id.*). Ms. Macaluso argued that virtual assistants must perform uncompensated standardized tasks that are required by Defendant, in addition to their compensated tasks. (*Id.* ¶ 50).

Ms. Macaluso brought this action on behalf of herself and similarly situated current and former virtual assistants who elected to opt in, pursuant to Section 216(b) of the FLSA. (*Id.* ¶¶ 58–59). In April 2020, this Court conditionally certified the collective action and approved for notice to be sent to similarly situated employees. (ECF No. 16). After the sixty-day opt-in period, 28 individuals opted into the matter pursuant to 29 U.S.C. § 216(b). (ECF No. 38 at 3). One individual later withdrew her opt-in consent form. (*Id.*). The parties proceeded to mediation in October 2020, at which time they reached a settlement agreement. (ECF No. 34).

Under the proposed settlement, Defendant will pay $150,000.00 to resolve the claims of the opt-in Plaintiffs. (ECF No. 39-1 ¶ 15). Opt-In Plaintiffs will receive settlement payments and liquidated damages. (*Id.*). Proposed payouts were calculated proportionally based on an individual assessment of the workweeks worked by Opt-In Plaintiffs. (ECF No. 38 at 4–5). The average payout under the settlement agreement is $3,410.41. (*Id.* at 5). The settlement also provides $200 payments to several virtual assistants who had no damages or who could not recall working overtime hours during the period of three years prior to the settlement. (*Id.*). The proposed settlement would fully resolve the Opt-In Plaintiffs' claims for overtime compensation against Zirtual. The settlement agreement also provides for a service award of $3,000.00 to Ms. Macaluso, attorneys' fees in the amount of $50,000.00, and litigations costs in the amount of $1,508.65. (*Id.* at 5–6; ECF No. 39-1 ¶ 16). This Court has reviewed the Joint Motion and Settlement Agreement and approves the proposed settlement for the following reasons.

## II. LAW & ANALYSIS

A court shall approve an FLSA settlement if there exists a bona fide dispute that can be resolved by a settlement agreement, the agreement was reached through an arms-length negotiation, and the agreement is fair, reasonable, and adequate. *Kritzer v. Safelite Solutions, LLC*,

No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381–82 (S.D. Ohio 2006)). In evaluating a settlement agreement, a court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation." *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2020).

The settlement meets this standard for approval. First, this Court finds that the settlement is the result of a bona fide dispute. Defendant denies the material allegations of the Opt-In Plaintiffs' claims and any violation of the FLSA, and this matter has been vigorously prosecuted. There is no indication that the parties were "merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). As discussed below, the Court also finds that the settlement agreement was reached as the result of arms-length negotiation.

### A. Fairness, Reasonableness, and Adequacy of Settlement

To determine whether a settlement is "fair, reasonable, and adequate," the Court balances the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016). On balance, these factors weigh in favor of approving the proposed settlement agreement.

### 1. Risk of Collusion

This Court finds that the negotiations were conducted at arm's length and there is no reason to believe the settlement involves collusion. The parties engaged in substantial document review and data analysis in this case. (ECF No. 38 at 8). Plaintiffs' counsel analyzed voluminous personnel

4

and wage-and-hour data and documents produced by the Defendant prior to engaging in settlement negotiations. (ECF No. 38-4 ¶¶ 20–21) A settlement was reached following a mediation session before Magistrate Judge Mark R. Abel. (*Id.* ¶ 23). This factor supports approval of the proposed settlement agreement.

### 2. Complexity, Expense, and Likely Duration of Litigation

By their nature, FLSA disputes are fact intensive and time consuming. The parties contend that this factor weighs in favor of settlement. (ECF No. 38 at 8). Difficult factual issues, including whether the covered virtual assistants indeed performed any work in excess of forty hours in any workweek, as well as the specific amount of excess time worked, would remain highly contested if this settlement were not approved. (*Id.*). The issues in this case are both factually and legally complex, suggesting that continued litigation "could be long and protracted." (*Id.*). As this Court found in *In re Telectronics Pacing Systems, Inc.*, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Given the unresolved factual and legal issues in this case, this Court finds that the complexity, expense, and duration of continued litigation weighs in favor of settlement.

### 3. Stage of Proceedings

Courts must also assess the progression of litigation to ensure that a plaintiff has adequate information to assess her case and the desirability of a settlement agreement. *See Kritzer*, 2012 WL 1945144, at *7. Litigation commenced in August 2019. (ECF No. 1). This Court granted conditional certification in April 2020. (ECF No. 16). As litigation has proceeded, the parties have engaged in extensive discovery. (ECF No. 38-4 ¶ 20). Plaintiffs' counsel received voluminous data

and documents from Defendant, allowing them to engage in substantial document review and data analysis. (ECF No. 38 at 8; ECF No. 38-4 ¶ 21). Both sides were able to assess the strengths and weaknesses of the case, as well as perform computations of claimed damages. (*Id.*). Thus, the extensive discovery completed in this case has allowed the parties to prosecute the case vigorously and strategically, as well as to engage in well-informed settlement negotiations. This factor weighs in favor of the fairness and adequacy of the settlement agreement.

### 4. Likelihood of Success on the Merits

The plaintiff's probability of success on the merits is the "most important factor" for a court to consider in approving an FLSA settlement. *See Kritzer*, 2012 WL 1945144, at *6. Where factual and legal complexities cut against a clear determination that a plaintiff will prevail on the merits, settlement will be desirable. *Id.* The parties note that FLSA litigation is "always risky and uncertain," before setting forth the hurdles that the Opt-In Plaintiffs would need to clear in order to prevail. (ECF No. 38 at 7). To succeed on the merits, they would need to establish Defendant's liability, as well as each virtual assistant's damages. (*Id.* at 7–8). The Defendant vehemently disputes any liability in this case. (*Id.*). Zirtual also challenges the Plaintiffs' assertions as to frequency and duration of overtime worked and would contest the admissibility of evidence to support the Plaintiffs' claimed overtime. (*Id.* at 8). Additionally, Zirtual still disputes the Plaintiffs' contention that the virtual assistants were not independent contractors. (*Id.*). As such, there are several substantial barriers to Plaintiffs' to success on the merits. Weighing these uncertainties against the certainty and finality of a settlement, that would also eliminate further expense and delay, this factor counsels in favor of approving the settlement agreement. This Court agrees with Plaintiffs that their likelihood of success on the merits is outweighed by the benefits of the proposed settlement.

### 5. Judgment of Experienced Counsel

Counsel for both sides are experienced FLSA litigators. Counsel for Plaintiffs all have extensive experience with FLSA cases and submit that this settlement is fair, reasonable, and adequate. (ECF No. 38-4 ¶¶ 5–13). The Court gives great weight to the beliefs of experienced counsel. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

### 6. Reaction of Absent Class Members

This Court must consider any objections to the settlement raised by class members. Of the twenty-eight Plaintiffs who have filed consent motions to join the action, only one has decided to withdraw her consent form; the remainder are in favor of settling the case and no class members have objected. (ECF No. 38 at 3). This factor also weighs in favor settlement approval.

### 7. Public Interest

As the district court noted in *Kritzer*, there is a "public interest favoring settlement . . . as the proposed settlement ends potentially long and protected litigation." 2012 WL 1945144, at *6 (citing *In re Broadwing*, 252 F.R.D. at 369). The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio January 18, 2019). The Court finds this factor also weighs in favor of approving the proposed settlements.

### B. Attorneys' Fees

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to

7

attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement. *See, e.g.*, *Rotuna*, 2010 WL 2490989, at *8 (approving of attorney's fees in the amount of one-third of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed*, 179 F.3d at 471. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Van Horn*, 436 F. App'x at 501. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*

Plaintiffs seek approval of attorneys' fees of $50,000.00, which is one-third of the total settlement amount. (ECF No. 38 at 14). Plaintiffs' counsel undertook representation pursuant to a contingency fee arrangement. (ECF No. 38-4 ¶ 40). At present, Plaintiffs' counsel's lodestar is $72,220.00, for a lodestar multiplier of 0.0692, which constitutes a negative lodestar multiplier. (ECF No. 38 at 14; ECF No. 38-4 ¶ 45). Counsel expects to perform additional work through the conclusion of this case, including correspondence with Opt-In Plaintiffs and administrative activities related to settlement. (ECF No. 38-4 ¶ 38). Defendant does not oppose Plaintiffs' request for one-third of the settlement fund as attorneys' fees. (ECF No. 38 at 14).

This Court finds that the percentage-of-the-fund approach is the appropriate method in this case, given the particular circumstances, *see In re Cardinal Health Ins. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007), and this Court's evaluation of the *Ramey* factors. To evaluate

whether the amount of an award is reasonable, courts consider: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). In light of these factors, this Court finds that awarding Plaintiff's counsel one-third of the settlement fund, or $50,000.00, is appropriate under the percentage-of-the-fund approach.

### 1. Value of Benefit to Plaintiff Class

The result obtained is typically regarded as the "single most important factor" in determining the reasonableness of fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Plaintiffs' counsel has achieved an average recovery of $3,410.41 for Opt-In Plaintiffs, which represents a substantial percentage of the potential value of their claims. (ECF No. 38 at 5, 12; ECF No. 38-3 (individual payments allocation schedule); ECF No. 38-4 ¶ 28). These payments were allocated proportionally based on an individual assessment of the workweeks worked by Plaintiffs and a reasonable estimate of weekly overtime hours worked. (ECF No. 38 at 12; ECF No. 38-4 ¶ 28). Several Opt-In Plaintiffs who may have no damages in the covered period will still receive payments of $200 each under the settlement. (ECF No. 38 at 12). There were also no objections raised to the settlement and only one Plaintiff who previously opted-in withdrew her consent form. (ECF No. 38-5). Opt-in Plaintiffs receive a significant financial benefit under the settlement agreement and this factor weighs in favor of awarding counsel their requested fee award.

### 2. Societal Stake in Attorneys' Fees

Society has a stake in rewarding attorneys who achieve a result that individual class members were unlikely to obtain on their own. *See Kritzer*, 2012 WL 1945144, at *9. This is especially true in collective actions, that allow claimants with smaller claims to pool claims and resources. *See Mullins*, 2019 WL 275711, at *4. There also exists a "public interest" in ensuring that attorneys who represent clients in class action litigation are adequately compensated, so that attorneys will continue to take on such cases in the future. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). At a broader level, the public also has an interest in "seeing individuals recovering something for their compensable injuries, not protracting litigation." *In re Telectronics*, 137 F. Supp. 2d at 1025. Judicial resources are conserved by the settlement of litigation, while still allowing individuals to be compensated for losses. This collective action allowed workers, many of whom would likely not have been willing or able to pursue their claims as individuals, to recover unpaid overtime compensation. *See Mullins*, 2019 WL 275711, at *5. What's more, some Opt-In Plaintiffs may have been unaware that they even had a potential claim against Defendant. Thus, this factor also weighs in favor of awarding Plaintiffs' counsel their requested fee award.

### 3. Whether Services were Undertaken on Contingent Fee Basis

Plaintiffs' counsel undertook this representation on a contingency fee basis. (ECF No. 38-4 ¶ 40). In doing so, counsel "undertook the risk of not being compensated" at all. *O'Bryant v. Pillars Protection Servs., LLC*, No. 2:19-cv-1354, 2020 WL 7486712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer*, 2012 WL 1945144, at *9). Counsel have not been compensated for any time or expense since the beginning of this litigation, which weighs in favor of granting an award

of attorney fees. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011).

Plaintiffs' counsel have invested significant time and effort into this litigation, specifically after conditional certification and during the notice period and settlement discussions. (ECF No. 38 at 13). Counsel reviewed and analyzed myriad personnel and compensation documents, including payroll, timekeeping, and task/activity records. (*Id.*). In aid of computing damages, counsel considered approximately 200,000 data points, which eventually allowed counsel to calculate proportional settlement payments and liquidated damages for each Opt-In Plaintiff. (ECF No. 38 at 13). Additionally, Plaintiffs' counsel interviewed nearly every Opt-In Plaintiff to supplement their damages computation, prepare a mediation demand, respond to discovery requests, and prepare for trial. (ECF No. 38 at 13). An award of one-third of the settlement fund will compensate Plaintiff's counsel for their work and the risk of taking this case on contingency.

### 4. Value of Services on Hourly Basis

An examination of the lodestar accrued in a case can be used to confirm the reasonableness of a percentage-of-the-fund award request. *See Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2013 WL 1241632, at *3 (N.D. Ohio Dec. 12, 2013) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 547, 565 (1986)). A lodestar may be increased by a multiplier "to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery." *In re Telectronics*, 137 F. Supp. 2d at 1041 (citing *Newberg on Class Actions* § 12.55 (3d ed. 1992)). Awards under the percentage-of-the-fund

11

method resulting in a 2.01 multiplier, essentially doubling the attorneys' lodestar, have been approved as reasonable in this jurisdiction. *See, e.g.*, *Thorn v. Bob Evans Farms, Inc.*, No. 2:12–CV–00768, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016); *see also Shanahan v. KeyBank*, No. 1:19cv2477, 2021 WL 1034403, at *5 (N.D. Ohio Mar. 16, 2021) (approving attorneys' fees resulting in a 3.75 lodestar multiplier where settlement provided recovery for approximately 35% of unpaid wages of class members).

Plaintiffs' counsel have billed approximately $72,220.00 in this matter to date, so the request for one-third of the settlement fund for attorney's fees constitutes a significant reduction of the lodestar. (ECF No. 38 at 6, 14; ECF No. 38-4 ¶ 45). Plaintiffs' counsel's rates have previously been found reasonable by courts in this Circuit after consideration of the individual attorneys' experience, expertise, practice area, office location, and history of successes. (ECF No. 38-4 ¶¶ 41–43). Counsel, who are experienced FLSA attorneys, expended reasonable hours on this matter and attest that detailed timekeeping records were kept during the pendency of this case. (*Id.* ¶¶ 5–13, 44). The request for an award of one-third of the settlement fund results in a lodestar multiplier of 0.692, a negative lodestar multiplier. Thus, the review of Plaintiffs' counsel's lodestar in this matter supports the reasonableness of their fee request under the percentage-of-the-fund method.

### 5. Complexity of Litigation

As previously discussed, this case was a complex wage and hour collective action with unresolved legal questions and substantial discovery. Plaintiffs' counsel invested substantial time into this case, from pre-litigation investigation well through discovery and settlement negotiations. (ECF No. 38 at 12–13). Key factual and legal issues remained in disputes throughout each step of the litigation, including damages and liability. This Court thus finds that this factor also weighs in

favor of awarding Plaintiffs' counsel the requested fee award.

### 6. Skill of Counsel

The professional skill and standing of the attorneys involved weighs in favor of granting Plaintiffs' counsel's requested fee award. Both Plaintiffs and Defendant are represented by highly qualified counsel with substantial experience in federal courts, class action litigation, and FLSA litigation. (ECF No. 38-4 ¶¶ 5–13). In particular, Plaintiff's counsel brings substantial collective experience in litigating claims under FLSA. (*Id.*). Counsel zealously advocated for the Opt-In Plaintiffs' interests throughout the entirety of this litigation. This factor weighs in favor of awarding Plaintiffs' counsel the requested fee award.

### C. Reimbursement of Expenses

Class counsel also seeks an award of $1,580.65 for expenses from the filing fee, service of process fees, and printing costs. (ECF No. 38-4 ¶ 46). Under the common fund doctrine, Plaintiff's counsel will be entitled to reimbursement of expenses that were reasonable and necessary in resolving a case. *See, e.g.*, *Mullins*, 2019 WL 275711, at *5 (approving request for $6,310.55 in expenses resulting from filing fees, mediation costs, and class notice costs). The expenses incurred here were reasonable and necessary to the resolution of this matter and reimbursement is therefore approved.

### D. Service Award

Service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). The settlement agreement here allocates $3,000 to named Plaintiff Kristi Macaluso. (ECF No. 39-1 ¶ 19). Plaintiffs' counsel

asserts that Ms. Macaluso "faithfully represented the interest of the Opt-Ins and ably assisted Plaintiffs' counsel" and was "instrumental" to achieving a settlement. (ECF No. 38-4 ¶ 36). During the litigation, she consulted with Plaintiffs' counsel at critical stages, attended mediation, helped counsel review and respond to Defendant's documents, aided in preparing a demand on behalf of herself and the other FLSA collective members, and provided other information and documents throughout litigation. (*Id.* ¶ 29). This Court finds that Plaintiff's involvement in the case was substantial and integral to achieving the award for the Opt-In Plaintiffs. Her assistance also "furthered the important public policies underlying the Fair Labor Standards Act." *Mullins*, 2019 WL 275711, at *6. Accordingly, this Court approves the service award of $3,000 to Kristi Macaluso as appropriate compensation for her significant participation in this litigation in the face of risk to her own interests.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Settlement Approval, including the request for expenses in the amount of $1,508.65 and the request for a service award in the amount of $3,000 each to Kristi Macaluso, and orders that this case be **DISMISSED WITHOUT PREJUDICE**. This Court awards Plaintiff's counsel $50,000.00 in attorney's fees. The parties are directed by the Court to file a Dismissal Order dismissing this case with prejudice not later than thirty (30) days after the entry of this Order. The Court will retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the

distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

    **IT IS SO ORDERED.**

                                                                           _____
                                                                           **ALGENON L. MARBLEY**
                                                                           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 17, 2021**